UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WACKO'S TOO, INC., a Florida
Corporation doing business as
"Wackos," *et al.*,

      Plaintiffs,

v.                                                    CASE NO. 3:20-cv-303-TJC-MCR

CITY OF JACKSONVILLE, a Florida
municipal corporation, *et al.*,

      Defendants.
_____/

## **ORDER**

**THIS CAUSE** is before the Court on Plaintiffs' Motion to Compel Deposition Answers (Detective Eddy) ("Motion") (Doc. 49) and Defendants' Response in Opposition thereto ("Response") (Doc. 53). For the reasons that follow, the Motion is **DENIED**.

**I.**    **Background**

On March 25, 2020, Plaintiffs filed their Complaint for Declaratory Judgment, Permanent Injunction, and Damages ("Complaint"), pursuant to 42 U.S.C. § 1983, against Defendants, City of Jacksonville, Mike Williams (in his official capacity as Sheriff of Duval County, Florida), and N.O. Archbold (in her individual capacity). (Doc. 1.) The Complaint alleges that certain provisions of Chapters 150 and 151 of the Jacksonville Code, as amended by

Ordinance 2020-74-E, together with certain policies and practices of the City of Jacksonville, are unconstitutional and/or preempted by Federal and state law.  (*Id.*)  Defendants filed their respective Answers and Affirmative Defenses to the Complaint in July and August of 2021.  (Docs. 46, 47.)

On September 13, 2021, Plaintiffs filed the present Motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure, seeking an order compelling Defendants and their agent to answer questions at oral deposition, identifying the names of certain undercover officers who appeared in photographs that were either provided through discovery or published online by a local television station, so that Plaintiffs "can effectively pursue their civil rights claims."[1]  (Doc. 49 at 1, 12.)  Plaintiffs claim that they have a vital need for this information because: (1) the unidentified officers were eyewitnesses to the constitutional violations alleged in the Complaint; and (2) one or more of those officers may be named as additional individual Defendants in this litigation to the extent they were personally responsible for the constitutional violations.  (*Id.* at 1-2.)  Plaintiffs state that they know the names of many of the officers who participated in the police raids and also know what many of the individual officers look like, but Plaintiffs are unable to connect "a name with a face" unless a witness with personal

---

[1] Plaintiffs also seek an award of attorney's fees for bringing their Motion. (Doc. 49 at 13-14.)

knowledge is able to provide that information.  (*Id.* at 2.)  Plaintiffs add that "there are certain officers who are known to have participated in the raid but whose identities are not known to the Plaintiffs" and that the two undercover officers who were the subject of Plaintiffs' inquiry at Detective Eddy's deposition fall into that category of unidentified officers who witnessed and participated in the raids.  (*Id.* at 9.)

During Detective Eddy's deposition on July 15, 2021, defense counsel instructed the witness not to answer questions pertaining to the identity of certain undercover officers in particular photographs, citing the police investigative privilege.  (Doc. 49 at 3-5; Doc. 53 at 2.)  According to Plaintiffs, the police investigative privilege does not bar the disclosure of the information sought, especially since the names and the images of the eyewitnesses have already been publicly disclosed.  (Doc. 49 at 6.) Plaintiffs explain:

> Assuming that Defendants have properly performed their obligations to list all witnesses in their Rule 26 Disclosures, the Disclosures will include the names of every undercover officer who was involved in the police actions at issue.  Plaintiffs have the ability to determine the identity of the officers shown in the two photographs by subpoenaing for deposition every one of those undercover officers and simply viewing them when they arrive or asking them at deposition if they are the individual in either of the two photographs.  Any attempt by the Defendants to assert the privilege would be for naught as Plaintiff would be able to ask every deposed officer what they did during the raid; what alleged violations they observed; who they detained; who they arrested; what rooms they operated in; and who made the important

3

> decisions during the course of the operation.   While Plaintiffs can certainly ascertain which officers appear in the photographs through that laborious process, it would be needlessly wasteful. Not all of the officers are important witnesses or are potential Defendants in this litigation; only a subset of officers fit those categories.

(*Id.* at 6-7.)   They add:

> From Plaintiffs' perspective, the City is trying to hide the identity of officers who not only violated the Plaintiffs' constitutional rights, but may be subject to individual liability for having done so.   The Court also has an interest in these disclosures: if either of the two officers was aware of the Court's 2004 Consent Order and arrested performers in contravention of that Order, they may well be in contempt of Court.   The public interest in the vindication of civil rights would certainly be impaired if this information is withheld.   In contrast, neither the Defendants nor their officers have any interest in withholding the names of material witnesses and potential defendants in connection with a police operation that ended two years ago.
> To the extent that the Defendants have any interest at all in withholding the identities of the officers shown in the two photographs, that interest can be preserved through an appropriate Order directing that the information not be publicly disclosed beyond the parties and their counsel without prior permission of the Court.

(*Id.* at 13.)

Defendants respond that the deposition answers sought by Plaintiffs would reveal the identities of the undercover officers "to the sixteen clubs that are parties to this litigation and other similar litigation also pending before this Court and represented by Plaintiffs' counsel," which "would destroy these officers' ability to continue to perform undercover work at nearly every adult entertainment establishment in Jacksonville."   (Doc. 53

4

at 1-2.) Defendants explain:

> Here, requiring the disclosure of facial recognition of the City's undercover police officers falls readily into any one of the *Bennet* categories—probably all of them. Thus, Detective Eddy should be able to refuse to answer questions about that kind of information under an assertion of the law enforcement privilege. Moreover, because these procedures, tactics and techniques are used in any current VICE investigations, and presumably will be utilized in any future investigations, the privilege applies.
>
> Defendants have met their burden to show that the privilege should be applied to protect the identity of undercover officers investigating adult entertainment clubs such as Plaintiffs in this case. It is no secret that these clubs can attract criminal activity, and officers need to remain undercover in order to investigate and properly detect such activity. . . . Disclosure of these officers' identi[t]ies could endanger them and could certainly jeopardize the integrity of current and future investigations.
>
> Plaintiffs do not need to have facial recognition of undercover officers in order to obtain the relevant facts regarding these investigations.[2] Any of these officers could sit for a deposition with his or her face covered and give complete testimony concerning the factual events at issue. Furthermore, Plaintiffs' assertion that they need to know the identity of undercover officers because they may bring them into this lawsuit as individual defendants is speculative at best, and there is a very low probability that these officers, working in their official capacities at the direction of their superiors during the course of these investigations, could possibly be *individually* liable for constitutional or other violations for simply doing their assigned jobs.

---

[2] Easy proof of this is demonstrated by the fact that Plaintiffs were able to identify and file suit against Defendant Sgt. Nuria Archbold who, at all relevant times during the events underlying this lawsuit, was an undercover officer for whom no Plaintiff had facial recognition.

(*Id.* at 6-8.)

## II. Standard

Matters of discovery and evidence are committed to the discretion of the district court. *Wu v. Thomas*, 996 F.2d 271, 275 (11th Cir. 1993); *Lee v. Etowah Cnty. Bd. of Educ.*, 963 F.2d 1416, 1420 (11th Cir. 1992). The rules "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1543, 1547 (11th Cir. 1985). "The discovery process is designed to fully inform the parties of the relevant facts involved in their case." *United States v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at *1 (M.D. Fla. Oct. 31, 2007) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). "Discovery in this district should be practiced with a spirit of cooperation and civility." Middle District Discovery (2021) at Section I(A)(1).

The scope of discovery is governed by Rule 26(b)(1), which provides:

The parties may obtain discovery regarding any nonprivileged

6

>matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(1).

"[F]ederal law governs the determination of the existence of a privilege in cases where the jurisdiction of the court is predicated upon federal law, even where there are pendent state claims." *White v. City of Fort Lauderdale*, No. 08-60771-CIV, 2009 WL 1298353, *2 (S.D. Fla. May 8, 2009). In *United States v. Van Horn*, the Eleventh Circuit "recognize[d] a qualified government privilege not to disclose sensitive investigative techniques," 789 F.2d 1492, 1507 (11th Cir. 1986), which the Supreme Court called an "informer's privilege." *Roviaro v. United States*, 353 U.S. 53, 59 (1957) (stating that "the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law"). The Eleventh Circuit held that "the privilege applies equally to the nature and location of electronic surveillance equipment," but the "privilege will give way if the defendant can show need for the information." *Van Horn*, 789 F.2d at 1508. The court emphasized that "the necessity determination requires a case[-]by[-]case balancing process." *Id.*

7

Essentially, the "qualified law enforcement investigatory privilege protects from disclosure files and reports of criminal *and* civil law enforcement investigations." *Fed. Election Comm'n v. Rivera*, 335 F.R.D. 541, 547 (S.D. Fla. 2020) (emphasis in original). "The purpose of the privilege 'is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation.'" *Id.*[3]

"It is the Government's burden to show that the information it seeks to withhold is the type which the law enforcement privilege is intended to protect." *United States v. Bennett*, No. 6:16-cr-256-Orl-41TBS, 2017 WL 11491960, *2 (M.D. Fla. Oct. 30, 2017) (citing *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010)).

> To meet its burden, the Government must show that the information pertains to: (1) law enforcement techniques or procedures; (2) that disclosure of the information will undermine the confidentiality of sources; (3) that if the information is disclosed it will endanger witness, law enforcement personnel, or the privacy of persons involved in an investigation; or (4) that disclosure of the information will interfere in some other way with an investigation. The privilege applies to both open and closed investigations. An investigation, however, need not be

---

[3] "[T]he law enforcement privilege is only appropriately raised and applied to governmental departments and law enforcement agencies who seek to protect investigatory files from disclosure . . . ." *White*, 2009 WL 1298353, at *4.

> ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public.

*Bennett*, 2017 WL 11491960, at *2 (internal quotation marks omitted); *see also In re City of New York*, 607 F.3d at 944, 948 (breaking number (4) quoted above to "information that would undermine 'the privacy of individuals involved in an investigation'" and "information that would seriously impair 'the ability of a law enforcement agency to conduct future investigations'").

When the government invokes the privilege, the court must "balance the interests of the litigant seeking the information against the government's interest in nondisclosure." *Sirmans v. South Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980). "If the litigant demonstrates that his need for the information outweighs the government's interest in maintaining secrecy, the qualified privilege is overcome." *Id.* In determining whether the privilege protects against disclosure or whether it must give way, the following non-exhaustive factors are considered:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any actual criminal proceeding either pending or reasonably likely to follow from the incident in question; (6)

9

> whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the [litigant's] case.

*Rivera*, 335 F.R.D. at 547-48; *Sirmans*, 86 F.R.D. at 495 (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

"The claim for application of the privilege is 'somewhat stronger' when law enforcement is seeking to protect ongoing investigations as contrasted with closed files, decisions to prosecute as contrasted with decisions not to prosecute, confidential informant identities as contrasted with names of incidental witnesses, confidential law enforcement tactics as contrasted with simple interview materials, and evaluative opinions as contrasted with facts." *Kahn v. United States*, No. 13-24366-CIV, 2015 WL 3644628, *3 (S.D. Fla. June 10, 2015). Also, "a plaintiff's right to discovery in a civil action is less fundamental than a criminal defendant's constitutional right 'to present a meaningful defense.'" *In re City of New York*, 607 F.3d at 936.

There is "a pretty strong presumption against lifting th[e] privilege." *Rivera*, 335 F.R.D. at 549; *see also In re City of New York*, 607 F.3d at 944. To rebut the presumption, "the party seeking disclosure must show (1) that its suit is 'non-frivolous and brought in good faith,' (2) that 'the information sought is [not] available through other discovery or from other sources,' and

10

(3) that the information sought is 'importan[t]' to the party's case." *In re City of New York*, 607 F.3d at 945 (holding that a compelling need is required with respect to the importance of the information sought[4]) (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343 (D.C. Cir. 1984)). Once the presumption is overcome, the "court must still balance '[t]he public interest in non-disclosure . . . against the need of a particular litigant for access to the privileged information.'" *In re City of New York*, 607 F.3d at 945. "[D]isclosure is required only if that compelling need outweighs the public interest in nondisclosure." *Id.*

### III. Discussion

The Court finds that Plaintiffs are not entitled to information identifying the undercover officers depicted in the subject photographs provided in discovery or published online. First, Defendants have shown that the information they seek to withhold is the type of information to which the law enforcement privilege applies, because the disclosure of the information will undermine the confidentiality of sources, will endanger law enforcement personnel, and/or will seriously impair the ability of a law enforcement agency to conduct future investigations. *See In re City of New*

---

[4] While "the ultimate burden of demonstrating the law enforcement privilege is on the party asserting the privilege," the opposing party must establish its compelling need for the information. *In re City of New York*, 607 F.3d at 945 n.23.

11

*York*, 607 F.3d at 944-45; *see also Kahn*, 2015 WL 3644628, at *4 (determining that "the identities of FBI personnel and confidential informants as well as investigative techniques, procedures and protocols should remain redacted").  As Defendants explain, revealing the identities of the undercover officers would destroy the officers' ability to continue to perform undercover work at nearly every adult entertainment establishment in Jacksonville.

Further, while Plaintiffs claim they have a vital need for the information, it appears they can obtain the relevant facts regarding the investigations without facial recognition of the undercover officers. Moreover, even if Plaintiffs have a compelling need for the requested information, they cannot overcome the strong presumption against lifting the privilege because, admittedly, Plaintiffs have the ability to determine the identity of the officers shown in the photographs by other means, namely, by subpoenaing the undercover officers for deposition.  Notably, Plaintiffs seek to obtain the information as part of a civil action where the right to discovery is considered less fundamental than a criminal defendant's constitutional right to present a meaningful defense.

Based on the foregoing, the Court determines that the requested information is protected by the law enforcement privilege and disclosure is not required because the public interest in non-disclosure outweighs

12

Plaintiffs' need for the privileged information. To the extent Plaintiffs argue that Defendants' interest in withholding the undercover officers' identities could be preserved by an order directing that the information be disclosed only to the parties and their counsel, this argument is rejected. *See In re City of New York*, 607 F.3d at 936-39 (holding that disclosure of confidential law enforcement information on an "attorneys' eyes only" basis or filing the documents under seal provides insufficient protection).

Accordingly, it is **ORDERED**:

The Motion (**Doc. 49**) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, on October 19, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record